MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace
60 East 42nd Street, Suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

| | |
|---|---|
| ADELFO GAVILAN GARCIA, CESAR GAYOSSO, GABRIEL TECUN, HAGEO CARDONA, LUIS FERNANDEZ ESCOBAR FLORES and MIGUEL ANGEL DIAZ GONZALEZ, *individually and on behalf of others similarly situated,* | **COMPLAINT** **COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)** |

*Plaintiffs*,

-against-

GOLDEN ABACUS INC. (d/b/a BARKOGI),
DANNY P. LOUIE, LAURA WONG and
ALBERT C. YUEN,

*Defendants.*
-------------------------------------------------------X

Adelfo Gavilan Garcia, Cesar Gayosso, Gabriel Tecun, Hageo Cardona, Luis Fernandez

Escobar Flores, and Miguel Angel Diaz Gonzalez, individually and on behalf of others similarly

situated (collectively "Plaintiffs"), by and through their attorney, Michael Faillace & Associates,

P.C., upon their knowledge and belief, and as against Golden Abacus Inc. (d/b/a BarKogi),

Danny P. Louie, Laura Wong, and Albert C. Yuen (collectively "Defendants"), allege as follows:

**NATURE OF THE ACTION**

1.      This is an action to recover minimum and overtime wages and liquidated damages, interest, costs, and attorneys' fees for violations of the FLSA ("FLSA"), the New York Labor Law ("NYLL"), and associated rules and regulations.

2.      Plaintiffs are former employees of Golden Abacus Inc. (d/b/a BarKogi), Danny P. Louie, Laura Wong and Albert C. Yuen.

3.      Defendants own, operate, and/or control a Korean restaurant located at 957 2nd Avenue, New York, New York 10022 under the name BarKogi.

4.      Upon information and belief, Defendants Danny P. Louie, Laura Wong and Albert C. Yuen serve or served as owners, managers, principals or agents of Defendant Corporation and through this corporate entity operate the Korean restaurant.

5.      Plaintiffs were employed as dishwasher, chicken fryers, cooks, and ostensibly as bus boy, food runner, and delivery workers.

6.      However, the busboy/food runner and one of the delivery workers were also required to perform various other restaurant duties, such as cleaning the bathroom, sweeping the restaurant, sweeping and washing the sidewalk, bringing tables and chairs out to the street at the beginning of the shift and bringing them back in at the end of the shift, stocking deliveries in the basement and taking out the garbage (hereinafter non- tip duties).

7.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage or overtime compensation for the hours that they worked.

8.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked, failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

9.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they worked over 10 hours per day.

10.     Defendants ostensibly employed and accounted for Plaintiffs Gavilan and Gayosso as busboy/food runner and delivery worker or other tipped employees in their payroll, but in actuality their duties required greater or equal time spent in non-tipped functions, including those outlined above.

11.     Regardless, at all times, Defendants paid these Plaintiffs (and other similarly situated employees) at the lowered tip-credit rate.

12.     However, under state law, Defendants were not entitled to take a tip credit because these Plaintiffs (and other similarly situated employees') non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever was less in each day. (12 N.Y.C.R.R. §146).

13.     Upon information and belief, Defendants employed the policy and practice of disguising these Plaintiffs (and other similarly situated employees') actual duties in payroll records to avoid paying them at the minimum wage rate, and to enable them to pay these Plaintiffs (and other similarly situated employees) at the lower tip-credited rate by designating them as busboy/food runners or other tipped workers instead of as non-tipped employees.

14.     Defendants also maintained a policy and practice of requiring these Plaintiffs and other similarly situated employees to purchase clothing and equipment necessary for their jobs at the employees' own expense.

15.      Defendants' conduct extends beyond Plaintiffs to all other similarly situated employees.

16.     In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs' tips and made unlawful deductions from the Plaintiffs' and other similarly situated employees' wages.

17.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

18.      Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of N.Y. Lab. Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commission of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6(a) (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs.

19.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually, and all other similarly situated employees and former employees of defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

21.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintained their corporate headquarters and offices within this district, and Defendants operate a Korean restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

### *Plaintiffs*

22.    Plaintiff Adelfo Gavilan Garcia ("Mr. Gavilan" or "Plaintiff Gavilan") is an adult individual residing in Queens County, New York.  Mr. Gavilan was employed by defendants from approximately December 2013 until on or about May 18, 2016.

23.    Plaintiff Cesar Gayosso ("Mr. Gayosso" or "Plaintiff Gayosso") is an adult individual residing in Queens County, New York.  Mr. Gayosso was employed by defendants from approximately January 2016 until on or about May 2016.

24.    Plaintiff Gabriel Tecun ("Mr. Tecun" or "Plaintiff Tecun") is an adult individual residing in Queens County, New York. Mr. Tecun was employed by defendants from approximately November 2013 until on or about February 2016.

25.    Plaintiff Hageo Cardona ("Mr. Cardona" or "Plaintiff Cardona") is an adult individual residing in Bronx County, New York.  Mr. Cardona was employed by defendants from approximately July 2014 until on or about March 2016.

26.     Plaintiff Luis Fernandez Escobar Flores ("Mr. Fernandez" or "Plaintiff Fernandez") is an adult individual residing in Queens County, New York. Mr. Fernandez was employed by Defendants from approximately November 2013 until on or about June 2016.

27.     Plaintiff Miguel Angel Diaz Gonzalez ("Mr. Diaz" or "Plaintiff Diaz") is an adult individual residing in Queens County, New York. Mr. Diaz was employed by defendants from approximately October 2014 until on or about March 2016.

*Defendants*

28.     At all times relevant to this Complaint, Defendants own, operate, and/or control a Korean restaurant located at 957 2nd Avenue, New York, New York 10022, under the name BarKogi.

29.     Upon information and belief, Golden Abacus Inc. (Defendant Corporation) is a corporation organized and existing under the laws of the State of New York.  Upon information and belief, it maintains its principal place of business at 957 2nd Avenue, New York, New York 10022.

30.     Defendant Danny P. Louie is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

31.     Defendant Danny P. Louie is sued individually in his capacity as an owner, officer and/or agent of the Defendant Corporation.

32.     Defendant Danny P. Louie possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

33.     Defendant Laura Wong is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

34.     Defendant Laura Wong is sued individually in her capacity as an owner, officer and/or agent of the Defendant Corporation.

35.     Defendant Laura Wong possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controlled significant functions of Defendant Corporation.  She determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

36.     Defendant Albert C. Yuen is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.

37.     Defendant Albert C. Yuen is sued individually in his capacity as an officer and/or agent of the Defendant Corporation.

38.     Defendant Albert C. Yuen possessed operational control over Defendant Corporation, and controlled significant functions of Defendant Corporation.  He determined the wages and compensation of the employees of Defendants, including Plaintiffs, established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

39.     Defendants operate a Korean restaurant located in the Midtown East section of Manhattan.

40.     Defendants maintained as their principal place of business a centralized office which is also the location of the Korean restaurant.

41.     Individual Defendants Danny P. Louie, Laura Wong and Albert C. Yuen possess operational control over Defendant Corporation, possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

42.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

43.     Each Defendant possessed substantial control over Plaintiffs (and other similarly situated employees) working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals referred to herein.

44.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are their employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

45.     In the alternative, Defendants constitute a single employer of Plaintiffs and all similarly situated individuals.

46.     Upon information and belief, individual defendants Danny P. Louie, Laura Wong and Albert C. Yuen operate Defendant Corporation as either an alter ego of themselves, and/or fail to operate Defendant Corporation as a legal entity separate and apart from themselves by, among other things:

(a)     failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a separate and legally distinct entity;

(b)     defectively forming or maintaining Defendant Corporation by, among other things, failing to hold annual meetings or maintaining appropriate corporate records;

    (c)      transferring assets and debts freely as between all Defendants;

    (d)      operating Defendant Corporation for their own benefit as the sole or

            majority shareholders;

    (e)      operating Defendant Corporation for their own benefit and maintaining

            control over it as a closed corporation or closely controlled entity;

    (f)      intermingling assets and debts of their own with Defendant Corporation;

    (g)      diminishing and/or transferring assets of Defendant Corporation to protect

            their own interests; and

    (h)      other actions evincing a failure to adhere to the corporate form.

47.    At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and NYLL.  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their services.

48.    In each year from 2013 to the present date, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

49.    In addition, upon information and belief, defendants and/or their enterprise were directly engaged in interstate commerce.  For example, numerous items that are used in the Korean restaurant on a daily basis, such as olive oil and meat, are produced outside of the State of New York.

*Individual Plaintiffs*

50.    Plaintiffs are former employees of Defendants, who primarily were employed as

dishwasher, chicken fryers, cooks and ostensibly employed as bus boy, food runner, and delivery workers.

51.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Adelfo Gavilan Garcia*

52.     Plaintiff Gavilan was employed by Defendants from approximately December 2013 until on or about May 18, 2016.

53.     At all times relevant to this complaint, Defendants ostensibly employed Plaintiff Gavilan as a delivery worker.

54.      However, Plaintiff Gavilan was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

55.     Although Plaintiff Gavilan was ostensibly employed as a delivery worker, he spent over twenty percent of each day performing non-delivery work throughout his employment with Defendants.

56.     Plaintiff Gavilan's work duties required neither discretion nor independent judgment.

57.     Plaintiff Gavilan regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

58.     From approximately December 2013 until on or about October 2015, Plaintiff Gavilan worked five days a week for a total of approximately 32-33 hours per week.

59.     From approximately October 2015 until on or about May 18, 2016, Plaintiff Gavilan worked five days a week for a total of approximately 36-38 hours per week.

60.    Throughout his entire employment, Plaintiff Gavilan was paid his wages by check.

61.    From approximately December 2013 until on or about December 2015, Defendants paid Plaintiff Gavilan $5.65 per hour.

62.    From approximately January 2016 until on or about May 18, 2016, Defendants paid Plaintiff Gavilan $7.50 per hour.

63.    Defendants never granted Plaintiff Gavilan any meal breaks or any other kind of rest period of any length.

64.    Plaintiff Gavilan's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

65.    In fact, Defendants regularly required Plaintiff Gavilan to arrive to work 30 minutes before his start time and continue working 30 minutes past his departure time and did not pay him for the additional time worked.

66.    Plaintiff Gavilan was never notified by Defendants that his tips were being included as an offset for wages.

67.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gavilan's wages.

68.    In addition, Defendants withheld a portion of Plaintiff Gavilan's tips; specifically, every week Plaintiff Gavilan would discover that defendants withheld at least $5 or $6 from the tips the customers had paid him.

69.    Further, Defendants did not provide Plaintiff Gavilan with any document or other statement accurately accounting for all of his actual hours worked or setting forth the rate of pay for all of his hours worked.

70.     No notification, either in the form of posted notices or other means, was given to Plaintiff Gavilan regarding overtime and wages under the FLSA and NYLL.

71.     Defendants never provided Plaintiff Gavilan with a written notice, in English and in Spanish (Plaintiff Gavilan's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

72.     Defendants required Plaintiff Gavilan to purchase "tools of the trade" with his own funds—including three bikes, a helmet, a vest, and a chain and lock.

*Plaintiff Cesar Gayosso*

73.     Plaintiff Gayosso was employed by Defendants from approximately January 2016 until on or about May 2016.

74.     At all times relevant to this complaint, Defendants ostensibly employed Plaintiff Gayosso as a busboy/food runner.

75.     However, Plaintiff Gayosso was also required to spend a significant portion of his work day performing the non-tipped, non-delivery duties described above.

76.     Although Plaintiff Gayosso was ostensibly employed as a busboy/food runner (tipped worker), he spent over twenty percent of each day performing non-tip work throughout his employment with Defendants.

77.     Plaintiff Gayosso's work duties required neither discretion nor independent judgment.

78.     Plaintiff Gayosso regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

79.     From approximately January 2016 until on or about May 2016, Plaintiff Gayosso worked five days a week for a total of approximately 33 hours per week.

80.     Throughout his employment with Defendants, Plaintiff Gayosso was paid his wages by check.

81.     From approximately January 2016 until on or about May 2016, Plaintiff Gayosso was paid $7.50 per hour.

82.     Plaintiff Gayosso was never notified by Defendants that his tips were being included as an offset for wages.

83.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Gayosso's wages.

84.     Defendants never granted Plaintiff Gayosso any meal breaks or rest period of any kind.

85.     Further, Defendants never provided Plaintiff Gayosso with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked.

86.     No notification, either in the form of posted notices or other means, was given to Plaintiff Gayosso regarding overtime and wages under the FLSA and NYLL.

87.     Defendants never provided Plaintiff Gayosso with a written notice, in English and in Spanish (Plaintiff Gayosso's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

88.     Defendants required Plaintiff Gayosso to purchase "tools of the trade" with his own funds—including four pairs of pants and two pairs of shoes.

*Plaintiff Gabriel Tecun*

- 13 -

89.     Plaintiff Tecun was employed by Defendants from approximately November 2013 until on or about February 2016.

90.     Defendants employed Plaintiff Tecun as a dishwasher for three months, a chicken fryer for eight months, and as a cook for the rest of his employment.

91.     Mr. Tecun's work duties required neither discretion nor independent judgment.

92.     Plaintiff Tecun regularly handled goods in interstate commerce, such as fish, meats, vegetables and other supplies produced outside of the State of New York.

93.     Throughout his employment with Defendants, Plaintiff Tecun regularly worked in excess of 40 hours per week.

94.     From approximately November 2013 until on or about April 2014, Plaintiff Tecun worked from approximately 9:00 a.m. until on or about 9:00 p.m. Sundays through Fridays (typically 72 hours per week).

95.     From approximately April 2014 until on or about November 2014, Plaintiff Tecun worked from approximately 9:30 a.m. until on or about 9:30 p.m. Tuesdays through Sundays (typically 72 hours per week).

96.     From approximately November 2014 until on or about February 2016, Plaintiff Tecun worked from approximately 11:30 a.m. until on or about 11:30 p.m. Tuesdays through Sundays (typically 72 hours per week).

97.     Throughout his employment with Defendants, Plaintiff Tecun was paid his wages in cash.

98.     From approximately November 2013 until on or about April 2014, Defendants paid Plaintiff Tecun a fixed salary of $400 per week.

99.     From approximately April 2014 until on or about November 2014, Defendants paid Plaintiff Tecun a fixed salary of $475 per week.

100.    From approximately November 2014 until on or about February 2016, Defendants paid Plaintiff Tecun a fixed salary of $600 per week.

101.    Plaintiff Tecun's pay did not vary even when he was required to stay late or work a longer day than his usual schedule.

102.    In fact, from approximately November 2014 until on or about February 2016, defendants required Plaintiff Tecun to stay at work 30 minutes past his regular departure time every 20 days to clean the bell in the kitchen, and did not pay him for the additional time worked.

103.    From approximately November 2013 until on or about April 2014, Defendants did not grant Plaintiff Tecun meal breaks or rest periods of any kind.

104.    From approximately April 2014 until on or about November 2014, Defendants granted Plaintiff Tecun 30 minutes for meal breaks but he could not take the breaks twice a week.

105.    From approximately November 2014 until on or about November 2015, Defendants did not grant Plaintiff Tecun any meal breaks and he had to find time to eat a quick meal.

106.    Further, Defendants never provided Mr. Tecun with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked.

107.    Defendants never provided Plaintiff Tecun with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

108.    No notification, either in the form of posted notices or other means, was given to Plaintiff Tecun regarding overtime and wages under the FLSA and NYLL.

109.    Defendants never provided Plaintiff Tecun with a written notice, in English and in Spanish (Plaintiff Tecun's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Hageo Cardona*

110.    Plaintiff Cardona was employed by Defendants from approximately July 2014 until on or about March 2016.

111.    Plaintiff Cardona was employed by Defendants as a dishwasher from approximately July 2014 until on or about October 2014, a chicken fryer and packer from approximately October 2014 until on or about January 2015, and as a cook from approximately January 2015 until on or about March 2016.

112.    Plaintiff Cardona's work duties required neither discretion nor independent judgment.

113.    Plaintiff Cardona regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

114.    Throughout his employment with Defendants, Plaintiff Cardona regularly worked in excess of 40 hours per week.

115.    From approximately July 2014 until on or about October 2014, Plaintiff Cardona worked as a dishwasher from approximately 12:30 p.m. until on or about 12:30 a.m. or 1:00 a.m. Sundays through Fridays (typically 72 to 75 hours per week).

116.     From approximately October 2014 until on or about January 2015, Plaintiff Cardona worked as a chicken fryer and packer from approximately 11:30 a.m. until on or about 11:30 p.m. Sundays through Fridays (typically 72 hours per week).

117.     From approximately January 2015 until on or about March 2016, Plaintiff Cardona worked as a cook from approximately 11:30 a.m. until on or about 11:30 p.m. Sundays through Fridays (typically 72 hours per week).

118.     Throughout his employment with Defendants, Plaintiff Cardona was paid his wages in cash.

119.     From approximately July 2014 until on or about October 2014, Defendants paid Plaintiff Cardona a fixed salary of $425 per week.

120.     From approximately October 2014 until on or about December 2014, Defendants paid Plaintiff Cardona a fixed salary of $475 per week.

121.     From approximately December 2014 until on or about March 2015, Defendants paid Plaintiff Cardona a fixed salary of $525 per week.

122.     From approximately March 2015 until on or about March 2016, Defendants paid Plaintiff Cardona a fixed salary of $600 per week.

123.     Plaintiff Cardona's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

124.     For example, from approximately July 2014 until on or about October 2014, Defendants required Plaintiff Cardona to work 30 minutes past his scheduled departure time and did not compensate him for the additional time they required him to work.

125.     Similarly, from approximately January 2015 until on or about March 2016, defendants required Plaintiff Cardona to stay at work 30 minutes past his regular departure time every 20 days to clean the bell in the kitchen, and did not pay him for the additional time worked.

126.     Prior to November 2015, Defendants did not grant any meal break to Plaintiff Cardona and he had to find time to quickly eat a meal.

127.     Further, Defendants never provided Plaintiff Cardona with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked.

128.     Defendants did not provide Plaintiff Cardona with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

129.     No notification, either in the form of posted notices or other means, was given to Plaintiff Cardona regarding overtime and wages under the FLSA and NYLL.

130.     Defendants never gave any notice to Plaintiff Cardona, in English and in Spanish (Plaintiff Cardona's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Luis Fernandez Escobar Flores*

131.     Plaintiff Fernandez was employed by Defendants from approximately November 2013 until on or about June 2016.

132.     At all times relevant to this complaint, Defendants employed Plaintiff Fernandez as a delivery worker.

133.     Mr. Fernandez's work duties required neither discretion nor independent judgment.

134.     Plaintiff Fernandez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

135.     From approximately November 2013 until on or about June 2016, Plaintiff Fernandez worked from approximately 5:00 p.m. until on or about 11:30 p.m. Sundays through Thursdays (typically 32.5 hours per week).

136.     Throughout his employment with Defendants, Plaintiff Fernandez was paid his wages by check.

137.     From approximately November 2013 until on or about December 2015, Defendants paid Plaintiff Fernandez $5.65 per hour.

138.     From approximately December 2015 until on or about June 2016, Defendants paid Plaintiff Fernandez $7.50 per hour.

139.     Plaintiff Fernandez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

140.     Specifically, Defendants regularly required Plaintiff Fernandez to work 30 minutes after he punched out and did not pay him for the additional time they required him to work.

141.     Defendants never granted Plaintiff Fernandez meal breaks or rest periods of any kind.

142.     Plaintiff Fernandez was never notified by Defendants that his tips were being included as an offset for wages.

143.     Defendants never accounted for these tips in any daily or weekly accounting of Plaintiff Fernandez's wages.

144.    In addition, Defendants withheld a portion of the tips customers paid Plaintiff Fernandez.

145.    Further, Defendants never provided Mr. Fernandez with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked.

146.    Defendants did not provide Plaintiff Fernandez with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

147.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Fernandez regarding overtime and wages under the FLSA and NYLL.

148.    Defendants never provided Plaintiff Fernandez with a written notice, in English and in Spanish (Plaintiff Fernandez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

149.    Defendants required Plaintiff Fernandez to purchase "tools of the trade" with his own funds—including four bikes, maintenance for the bikes, three helmets, two jackets, ten sets of lights, four padlocks, and four chains.

*Plaintiff Miguel Angel Diaz Gonzalez*

150.    Plaintiff Diaz was employed by Defendants from approximately October 2014 until on or about March 2016.

151.    At all times relevant to this complaint, Defendants employed Plaintiff Diaz as a delivery worker.

152.    Mr. Diaz's work duties required neither discretion nor independent judgment.

153.    Plaintiff Diaz regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

154.    From approximately October 2014 until on or about December 2015, Plaintiff Diaz worked from approximately 11:00 a.m. until on or about 4:30 p.m. six days a week and an additional shift from approximately 5:30 p.m. until on or about 11:00 p.m. five times a month (typically 33 to 38.5 hours per week).

155.    From approximately January 2016 until on or about March 2016, Plaintiff Diaz worked from approximately 10:30 a.m. until on or about 2:30 p.m. six days a week and from approximately 5:30 p.m. until on or about 11:00 p.m. three days a week  (typically 40.5 hours per week).

156.    Throughout his employment with Defendants, Plaintiff Diaz was paid his wages by check.

157.    From approximately October 2014 until on or about December 2015, Defendants paid Plaintiff Diaz $5.65 per hour.

158.    From approximately January 2016 until on or about March 2016, Defendants paid Plaintiff Diaz $7.50 per hour.

159.    Plaintiff Diaz was never notified by Defendants that his tips were being included as an offset for wages.

160.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Diaz's wages.

161.    In addition, Defendants withheld a portion of the tips customers paid Plaintiff Diaz.

162.    Further, Defendants never provided Mr. Diaz with any document or other statement accurately accounting for all of his actual hours worked, or setting forth the rate of pay for all of his hours worked.

163.    No notification, either in the form of posted notices or other means, was given to Plaintiff Diaz regarding wages under the FLSA and NYLL.

164.    Defendants never provided Plaintiff Diaz with a written notice, in English and in Spanish (Plaintiff Diaz's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

165.    Defendants required Plaintiff Diaz to purchase "tools of the trade" with his own funds—including one electric bike, one regular bike, a helmet, and two sets of lights.

*Defendants' General Employment Practices*

166.    At all times relevant to this Complaint, Defendants maintained a policy and practice that required Plaintiffs Tecun and Cardona, and all similarly situated employees, to work in excess of forty (40) hours per week without paying them appropriate minimum wage, overtime compensation or  "spread of hours" pay, as required by federal and state laws.

167.    All Plaintiffs were victims of Defendants' common policy and practices which violated their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

168.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

169.    As part of its regular business practice, Defendants intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL. This policy and pattern or practice included depriving delivery workers of a portion of the tips earned during the course of employment.

170.    Defendants unlawfully misappropriated charges purported to be gratuities received by delivery workers, and other similarly situated employees, in violation of New York Labor Law § 196-d (2007).

171.    Under the FLSA and NYLL, in order to be eligible for a "tip credit," employers of tipped employees must either allow employees to keep all the tips that they receive, or forgo the tip credit and pay them the full hourly minimum wage.

172.    In addition, defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

173.    Defendants failed to inform Plaintiffs that their tips were being credited towards the payment of the minimum wage.

174.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

175.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but never provided them with any additional compensation.

176.    Defendants required Plaintiffs Gavilan and Gayosso (and other ostensibly tipped employees) to perform several non-tip-related tasks for over 20% of the time they worked each work day, in addition to their primary role as bus boy, food runner and delivery worker. These responsibilities included those outlined above.

177.    These Plaintiffs (and other ostensibly tipped employees) were ostensibly employed as busboys/food runners and delivery workers (tipped employees), although their actual duties included time spent in non-tipped functions.

178.    These Plaintiffs (and other ostensibly tipped employees) were paid at the lowered

tip-credited rate by Defendants. However, under state law, Defendants were not entitled to a tip

credit because these Plaintiffs non-tipped duties exceeded 20% of each work day. (12

N.Y.C.R.R. § 146).

179.    New York State regulations provide that an employee cannot be classified as a

tipped employee "on any day in which he has been assigned to work in an occupation in which

tips are not customarily received." (12 N.Y.C.R.R. §§146-3.3(c)). Similarly, under federal

regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if

that time is devoted to a non-tipped occupation.

180.    The work duties of these Plaintiffs (and other ostensibly tipped employees) were

not incidental to their occupation as busboys/food runners and delivery workers, but instead

constituted entirely unrelated occupations with duties such as those outlined above. While

performing these duties, Plaintiffs Gavilan and Gayosso (and other ostensibly tipped employees)

did not receive tips; therefore, it constituted a non-tipped occupation, and Defendants could not

lawfully take a tip credit for any of the hours that these Plaintiffs (and other ostensibly tipped

employees) worked in these roles.

181.    In violation of federal and state law as codified above, Defendants classified these

Plaintiffs (and other ostensibly tipped employees) as tipped employees and paid them at the tip-

credited rate when they should have classified them as non-tipped employees and paid them at

the minimum wage rate.

182.    Defendants failed to post required wage and hour posters in the workplace, and

did not provide Plaintiffs, and all similarly situated employees, with statutorily required wage

and hour records or statements of their pay received, in part so as to hide Defendants' violations

of the wage and hour laws, and to take advantage of the employees' relative lack of sophistication in wage and hour laws.

183.   Some Plaintiffs were paid their wages in cash.

184.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

185.   Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

186.   Defendants' unlawful conduct is intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and other similarly situated current and former workers.

187.    Defendants failed to provide Plaintiffs and other employees with wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

188.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

189.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class"), *i.e.*, persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

190.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and were subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage and overtime.

191.    The claims of Plaintiffs stated herein are similar to those of the other similarly situated employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

192.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

193.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

194.    Defendants constitute an enterprise within the meaning of the FLSA, 29 U.S.C. § 203 (r-s).

195.    Defendants failed to pay Plaintiffs and the FLSA Class members at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

196.    Defendants' failure to pay Plaintiffs and the FLSA Class members at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

197.    Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

198.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

199.    Defendants, in violation of the FLSA, failed to pay Plaintiffs and the FLSA class members overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

200.    Defendants' failure to pay Plaintiffs and the FLSA Class members overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

201.    Plaintiffs and the FLSA class members were damaged in an amount to be determined at trial.

**THIRD CAUSE OF ACTION**
**(VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)**

202.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

203.    Defendants, in violation of the NYLL, paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

204.    Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of NYLL § 663.

205.    Plaintiffs were damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**(VIOLATION OF THE OVERTIME PROVISIONS OF THE**
**NEW YORK LABOR LAW)**

206.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

207.    Defendants, in violation of the NYLL Art. 19 and 12 N.Y.C.R.R. § 146-1.4, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

208.    Defendants' failure to pay Plaintiffs overtime compensation is willful within the meaning of NYLL § 663.

209.    Plaintiffs were damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**(VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR)**

210.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

211.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 142-2.4.

212.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

213.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

214.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

215.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

216.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

217.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

218.    Defendants never provided Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

219.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION
### (RECOVERY OF EQUIPMENT COSTS)

220.    Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

221.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to

perform their job, such as bicycles, further reducing his wages in violation of the FLSA and

NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

222.    Plaintiffs were damaged in an amount to be determined at trial.

### NINTH CAUSE OF ACTION
### (VIOLATION OF THE TIP WITHHOLDING PROVISIONS
### OF THE NEW YORK LABOR LAW)

223.  Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

224.  Defendants unlawfully and without permission from Plaintiffs misappropriated

and withheld gratuities paid by customers which should have been retained by Plaintiffs.

225.  Defendants' action violated NYLL §196-d.

226.  Defendants are liable to Plaintiffs in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against

Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of

notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the

pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the

FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and

associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members;

(c)    Declaring that Defendants violated the recordkeeping requirements of, and

associated rules and regulations under, the FLSA with respect to Plaintiffs and the FLSA class

members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)    Declaring that Defendants' violation of the provisions of the FLSA is willful as to

Plaintiffs and the FLSA class members;

(e)    Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)    Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)    Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL;

(h)    Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL;

(i)    Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations;

(j)    Declaring that defendants violated the recordkeeping requirements of the NYLL with respect to Plaintiffs compensation, hours, wages; and any deductions or credits taken against wages;

(k)    Declaring that Defendants' violations of the NYLL are willful as to Plaintiffs;

(l)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b) and 198(1-d);

(m)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of compensation due minimum wage and overtime compensation shown pursuant to NYLL § 663 and 198-d;

(n)    Awarding Plaintiffs and the FLSA class members prejudgment interest and the expenses incurred in this action, including costs and attorneys' fees, as provided by the FLSA and the NYLL;

(o)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(p)    All such other and further relief as the Court deems just and proper.


Dated: New York, New York
August 5, 2016

MICHAEL FAILLACE & ASSOCIATES, P.C.


By:    _/s/ Michael Faillace_____
       Michael Faillace
       MICHAEL FAILLACE & ASSOCIATES, P.C.
       60 East 42nd Street, Suite 2540
       New York, New York 10165
       Telephone: (212) 317-1200
       Facsimile: (212) 317-1620
       *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 23, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Adelfo Gavilan- Garcia

Legal Representative / Abogado:        Michael Faillace & Associates, P.C.

Signature / Firma:                _Adelfo Gavilan Garcia_

Date / Fecha:                    23 de mayo de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

_____

Faillace@employmentcompliance.com

May 23, 2016

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                     Cesar Gayosso

Legal Representative / Abogado:     Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      23 de mayo de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 23, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                              Gabriel Tecun

Legal Representative / Abogado:             Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                              23 de mayo de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 23, 2016

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    <u>Hageo Cardona</u>

Legal Representative / Abogado:   <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:                _____

Date / Fecha:                     <u>23 de mayo de 2016</u>

# Michael Faillace & Associates, P.C.

Employment and Litigation Attorneys

60 E 42nd Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 23, 2016

BY HAND

TO:   Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Luis Fernando Escobar Flores

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     23 de mayo de 2016

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 2540
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

May 23, 2016

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                          Miguel Angel Diaz Gonzalez

Legal Representative / Abogado:          Michael Faillace & Associates, P.C.

Signature / Firma:                       *Miguel Angel DG*

Date / Fecha:                            23 de mayo de 2016